IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARCELL L. MARTIN | § | |
| TDCJ-CID No. 1193575, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-CV-64-Z-BR |
| | § | |
| BILL CLEMENTS UNIT OFFICERS, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants

Amy Hitchcock, Margaret Hayhurst, Jaime Pena, Varlee Karoma, Jose Torres, Guy Pigg, Ferede

Shakife and Derek Hyde. (ECF 51). For the reasons stated herein, the Magistrate Judge

recommends that the Motion be GRANTED.

## I. FACTUAL BACKGROUND[1]

On November 23, 2022, Plaintiff Marcell L. Martin ("Martin") had an anxiety attack in his

cell and began to fear that officers were trying to kill him. (ECF 11 at 4). He requested to see

"psych," but officers refused. According to Martin, officers then "threw gas in my cell" and rushed

in to tackle him to the floor. He was placed in handcuffs and dragged out of the cell by his arms.

He claims that officers then began kicking and punching him in the eyes, head, and face,

---

[1]These background facts are taken from Plaintiff's Complaint (ECF 11) and questionnaire responses (ECF 25, 29) and are assumed to be true (except as otherwise noted below) for the purpose of evaluating the merits of Defendants' Motion.

presumably causing him to lose consciousness. When Martin awoke, he was naked in a cell and could not see because his eyes were burning and swollen shut. He remembers someone putting a blanket over him before he passed out again. When he awoke the second time, he was in a crisis cell, where he remained for the next 7-14 days. He claims that he did not receive medical attention while there, but, after that time, he was transferred to the Montford Unit for treatment. He alleges that his eye sockets were fractured, and that his wrists and legs were cut by restraints during the use of force. (ECF 11 4-9).

Martin filed this lawsuit on February 10, 2023, alleging excessive force and failure to provide medical care. He was unable to name any Defendants because the officers who extracted him from his cell were wearing protective equipment and were unrecognizable. (ECF 25 at 2). The Court ordered authenticated records to help identify potential defendants, and Martin ultimately asked to add Amy Hitchcock, Jaime Pena, Varlee Karoma, Jose Torres, Guy Pigg, Ferede Shakife, Derek Hyde (the "Officer Defendants"), and Margaret Hayhurst ("Hayhurst") as Defendants in this lawsuit. (ECF 29).[2] Defendants filed this Motion, claiming that they are entitled to qualified immunity. Martin did not respond to the Motion.

## II. SUMMARY JUDGMENT STANDARD

### A.    Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2]Another officer, Dshae Casias, also was added, but has been dismissed from this case for failure to serve. (ECF 48).

law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co*., 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp*., 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Martin's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut*

*Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.    Martin's Failure to Respond is Not Dispositive.**

When a nonmoving party does not file a response to a motion for summary judgment, the failure to respond "does not permit the court to enter a 'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). As the United States Court of Appeals for the Fifth Circuit has explained:

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *John v. La. (Bd. of Trustees) for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir. 1985). The movant has the burden of establishing the absence of a genuine issue of material fact, and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id.* at 708. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (*citing Hibernia*). Moreover, FED. R. CIV. P. 56(e) provides that:

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Therefore, Defendants still must provide sufficient evidence upon which the Court may base a summary judgment. Failure to do so requires the Court to deny the Motion, even if it is unopposed.

C.      **Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit

officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Martin does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. EXCESSIVE FORCE CLAIM

The question before the Court is whether the Officer Defendants are entitled to qualified immunity for their use of force against Martin, as determined by the undisputed facts. Martin alleges that the Officer Defendants threw tear gas into his cell while was having an anxiety attack, and then proceeded to tackle him to the ground, restrain him, and kick and punch him before dragging him out of the cell by his arms. (ECF 11 at 4).

**A.    The Parties' Conduct as Depicted by Video.**

In support of their Motion, the Officer Defendants have provided video of the relevant events. While the Court is to review the facts in the light most favorable to the non-moving party, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when

it is blatantly contradicted and utterly discredited by video recordings." *Trammel v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017). The U.S. Supreme Court has instructed that, when the video evidence is conclusive, the Court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The Fifth Circuit has applied this standard many times. *Hodge v. Engleman*, 90 F.4th 840, 846 (5th Cir. 2024). For example, the Fifth Circuit has reversed a denial of qualified immunity based on video evidence, reasoning that, when "there is video evidence that 'blatantly contradict[s]' the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts 'in the light depicted by the videotape.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott,* 550 U.S. at 380-81); *see also Livingston v. Texas*, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023) (per curiam) (affirming summary judgment on qualified immunity grounds by relying on police dashcam footage that contradicted plaintiff's claims). "In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment." *Hodge*, 90 F.4th at 846. Therefore, when the video "blatantly contradicts" Martin's version of events, the video will control.

**B.    Martin's Claim of Excessive Force.**

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes actions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). Not all force rises to the level of an Eighth Amendment claim. Specifically, Eighth Amendment protections do not extend to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). To determine whether a prison official violated an inmate's rights by using excessive force, "the core judicial inquiry is . . . whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7. Courts must "focus on the prison official's 'subjective intent' and determine it 'by reference to the well-known *Hudson* factors.'" *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016)). Those factors are "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Id.* (quoting *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)). The Court addresses each element in turn.

      **1.**        **Extent of the injury suffered.**

The first issue is the extent of the injuries suffered by Martin in connection with the Officer Defendants' use of force. The extent of injury suffered "is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (quoting *Hudson*, 503 U.S. at 7). While a "significant" injury is not required to establish an excessive force claim, the injury must be more than *de minimis*. *Hudson*, 503 U.S. at 9-10. Martin claims in his Complaint that he lost consciousness, and suffered cuts, bruises and "badly fractured" eye sockets.

Cuts and bruises are nothing more than *de minimis* injuries from the use of force. *See, e.g., Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (sore, bruised ear lasting for three days is *de minimis* injury that does not support excessive force claim); *Earl v. Dretke*, 177 F. App'x 440, 2006 WL 1096707 (5th Cir. 2006) (allegations that an officer injured an inmate by causing him to lose a fingernail, which caused bleeding and swelling, fail to state an excessive force claim because the injuries were *de minimis* ).

Martin also alleges that his eyes were swollen shut after he was extracted from his cell by

force, either due to the use of chemical agents or due to the force applied. The Court of Appeals for the Fifth Circuit has held that the use of chemical agents, when reasonably necessary to subdue a "recalcitrant prisoner," does not constitute cruel and unusual punishment. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975); *see also Brown v. Vasquez*, No. 5:14-CV-198-BG, 2015 WL 13662177 at *3 (N.D. Tex. Sept. 11, 2015) (when inmate refused to comply with numerous orders before each burst of chemicals, the use of chemicals, which did not result in injury, did not constitute cruel and unusual punishment); *Scott v. Tex. Dep't of Crim. Just. Dir.*, 2022 U.S. Dist. LEXIS 47864 *18 (E.D. Tex. Feb. 15, 2022) (when plaintiff sustained *de minimis* injury from use of pepper spray, the plaintiff failed to establish a claim of excessive force). The undisputed record and video evidence indicate that Martin was not complying with the Officer Defendants' orders before chemical agents were used. (ECF 54 at Exh. 6). In fact, he was fighting back at every effort to restrain him for transport to the crisis management cell. (*Id.*).

The Officer Defendants allege that there is no evidence that Martin's eye sockets were fractured during the use of force because the video does not show the application of force to Martin's eye. (ECF 52-1 at 21). However, the video does not expressly and unequivocally contradict Martin's allegation, in that the camera's view is blocked for a portion of the time that the Officer Defendants were on the floor with Martin attempting to apply restraints as he actively resisted them. Therefore, the Court must take Martin's allegation as true that the injuries occurred during the use of force.

Medical records show that his right orbital floor was fractured, but do not support Martin's allegation of "badly fractured" eye sockets. Records show that Martin never complained of eye pain, double vision, or an inability to move his right eye. "The lack of those specific complaints indicate [he] had an uncomplicated fracture of the floor of his right orbit." (ECF 53-2 at 9). An

ophthalmologist determined that Martin needed no surgical intervention, and the fracture healed on its own. (*Id*. at 10; 27). The Court will take as true the severity of Martin's injuries as outlined in the medical records. *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (in reversing summary judgment denying qualified immunity, finding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations"); *Wilburn v. Shane*, 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. Aug. 20, 1999) (finding it "implausible that the hospital would not have recorded the severe injuries" that plaintiff alleged in an excessive force case). In short, there is no summary judgment evidence showing anything other than *de minimis* injuries suffered by Martin as a result of the use of force. For the purposes of this Motion, the Court determines that this factor weighs in the Officer Defendants' favor.

### 2.      Need for the application of force.

According to Martin's Complaint, he was gassed and beaten after he asked to see the unit psychologist, indicating that the Officer Defendants' conduct was unprovoked. Where, as here, video evidence contradicts the nonmoving party's evidence, we must view the evidence "in the light depicted by the videotape." *See Scott*, 550 U.S. at 381. The video shows that Martin failed to comply with orders to submit to restraints so he could be transferred to a crisis management cell. Martin consistently fought the Officer Defendants at every step of the process. He refused restraints and refused to stop blocking the door by pushing his arm through the food slot. He fought the Officer Defendants as they attempted to apply hand and leg restraints.[3] Once restraints were applied, he refused to cooperate in the Officer Defendants' efforts to help him stand. Their attempts to move Martin into a standing position failed due to his failure to cooperate, his large size and the

---

[3]Although Martin alleges that he was tackled to the ground, the video shows that Martin was already on the floor when the Officer Defendants entered.

fact that he was naked, wet and the cement floor was flooded, which prevented the Officer Defendants from getting sufficient traction to lift him. The Officer Defendants then attempted to roll him onto a backboard so they could carry him out of the cell and place him on a gurney, but Martin fought these efforts as well. Even after the Officer Defendants were able to place Martin on the gurney, he continued to fight and kick at them. Chemical agents were deployed numerous times throughout the extraction effort, which apparently did little to deter Martin's behavior or induce compliance. (ECF 54 at Exh. 6).

The Fifth Circuit "has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders." *Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *6 (S.D. Tex. Apr. 21, 2013) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)). Officials are justified in using some degree of force in "a good-faith effort to maintain or restore discipline" when a prisoner refuses to cooperate with legitimate directives of an official. *Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified when inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution") (citing *Minix v. Blevins*, No. 6:06cv306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007)); *Rios v. McBain*, No. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *R. & R. adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005). The Court finds that this factor weighs in the Officer Defendants' favor in that Martin undisputedly was failing to comply with orders to such an extent that force was necessary to induce compliance.

11

### 3.    Relationship between the need and the amount of force used.

The Court finds that the use of force was the direct result of Martin's own behavior, was minimally applied in an effort to restore and maintain discipline and was reasonable under the circumstances. *See Funari v. Warden*, No. 7:12-cv-011-O, 2014 WL 1168924 (N.D. Tex. 2014) (finding use of force was not excessive where a guard struck an inmate in the face several times with his knee, causing injury, while an extraction team held the inmate on the floor of his cell attempting to gain control), *aff'd*, No. 14-10391, 609 F. App'x 255 (5th Cir. 2015); *Freeman v. Sims*, No. 7:10-cv-012-O, 2013 WL 1294676 (N.D. Tex. 2013) (finding use of force was not excessive where prison guard used a riot shield to slam an inmate into a wall, knocking him to the floor, and causing physical injury, after inmate became belligerent, verbally abusive, and repeatedly twisted away from escorting guards), *aff'd*, No. 13-10492, 558 F. App'x 412 (5th Cir. 2014). Martin's resistance required a use of force to gain his compliance.

In situations such as this, "[prison officials] are entitled to wide-ranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (finding that the use of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force). "The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id*. (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)); *see also Williams v. Hoyt*, 556 F.2d 1336, 1339-40 (5th Cir. 1977) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive).

The Officer Defendants admit that Martin was punched on two separate occasions during the extraction. First, after Martin grabbed Officer Casias' left arm and refused to let go, Casias hit Martin's upper arm with a closed fist four times, after which Martin released Casias's arm.

However, Casias is no longer a defendant in this case and his actions cannot be imputed to the remaining Officer Defendants. Second, Martin was hit by Defendant Torres two times in the chest with a closed fist after Martin grabbed Torres' hand and Torres was unable to remove it from Martin's grip. The Court finds that Torres' reaction was a reasonable response to regain compliance and does not constitute excessive force.

Martin's claim that the force used by the Officer Defendants was excessive is refuted by the video of the incident, as described above. Because the video shows Martin's continued resistance, and Martin failed to identify any evidence that the Officer Defendants' use of force was gratuitous or malicious, his Complaint does not show a genuine factual dispute with respect to the relationship between the need for force and the amount of force used. *Hudson*, 503 U.S. at 9 ("[N]ot … every malevolent touch by a prison guard gives rise to a federal cause of action.").

The fact that Martin was apparently in the throes of an anxiety attack and may have been unable to fully understand what was happening does not change the analysis. The law does not require the Officer Defendants to question why a prisoner is fighting back and refusing orders before they administer force. Here, the undisputed evidence shows that force was used against Martin in an effort to restore and maintain discipline, not maliciously and sadistically in an effort to cause him harm. This factor weighs in favor of the Officer Defendants.

**4.     The threat reasonably perceived by the Officer Defendants.**

The Officer Defendants presented evidence that they reasonably perceived a threat. According to the video, Martin was clearly agitated, was either unwilling or unable to respond to their orders, and physically fought them throughout the extraction. A prison official could reasonably perceive Martin's actions, displayed in the video, as threatening because he did not comply with the Officer Defendants' instructions and aggressively fought them throughout the

duration of the extraction. *See, e.g., Byrd*, 48 F.4th at 348 (affirming summary judgment for prison officials where inmate failed to comply with officers' instructions, resisted when officers attempted to restrain him, and the incident would not have occurred but for inmate's violent resistance). In addition, Martin is larger than many of the Officer Defendants; that, combined with his agitated state and violent response to their orders, undisputedly indicate that the Officer Defendants were reasonable in perceiving that force was necessary. Further, Martin provides no evidence creating a factual dispute with respect to the Officer Defendants' reasonable perceptions, so he has failed to carry his burden as to this element. This factor weighs in favor of the Officer Defendants.

###### 5.      Any efforts made to temper the severity of a forceful response.

The video evidence indicates that Martin was given verbal warnings before the altercation became physical, and again at every stage of the extraction. They repeatedly warned him that his failure to cooperate would result in continued use of force and use of chemical agents. The use of force stopped as soon as Martin was restrained and placed on the gurney. Further, Martin points to no evidence showing that any of the Officer Defendants unreasonably escalated or unnecessarily continued their use of force against him once he ceased to resist. Martin has failed to establish a genuine dispute of material fact with respect to the efforts made to temper the severity of force. This factor weighs in favor of the Officer Defendants.

Even when viewing the evidence in a light most favorable to Martin, the undisputed evidence shows no violation of Martin's constitutional rights.

14

C.      **Martin Does Not Overcome the Second Prong of the Qualified Immunity Analysis.**

1.      **No violation of clearly established law.**

Even assuming that the Officer Defendants' conduct resulted in a violation of Martin's constitutional rights, their conduct was objectively reasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Doege*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

15

This is not the rare "obvious case" in which the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear such actions violate a prisoner's rights. Further, Martin provided no case law in response to the Motion that supports his position. Thus, he failed to meet his burden to show that the Officer Defendants should have known that their conduct violated clearly established law.

### 2. The Officer Defendants' conduct was objectively reasonable.

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (internal marks omitted). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002); *see also Stanton v. Sims*, 571 U.S. 3, 6 (2013) (government officials are given "breathing room to make reasonable but mistaken judgments"). Thus, denial of an official's motion for summary judgment predicated upon qualified immunity requires two distinct determinations: (1) "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law"; and (2) "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Hogan v. Cunningham*, 722 F.3d 725, 730 (5th Cir. 2013).

The risk an individual poses to officers is part of the objective-reasonableness analysis, which is a question of law. *Argueta*, 86 F.4th at 1092. "The question for this court is whether [the police officer] could reasonably believe that [the suspect] posed a serious threat of harm." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *see also Roque v. Harvel*, 993 F.3d 325,

333 (5th Cir. 2021) (whether an officer acted in an objectively reasonable way is a legal question for the court that asks whether "the suspect poses a threat of serious physical harm, either to the officer or to others"); *Romero v. City of Grapevine*, 888 F.3d 170, 176–77 (5th Cir. 2018) (same) (collecting cases).

The undisputed summary judgment evidence shows that the Officer Defendants' conduct was objectively reasonable. Martin was in an agitated state and did not obey numerous orders to comply with restraints and stop resisting. He continued to physically fight back throughout the extraction process. In addition, Martin provided no evidence in response to the Motion that the Officer Defendants' conduct was unreasonable under the circumstances. Therefore, Martin has not created a disputed material fact regarding the reasonableness of the Officer Defendants' actions.

**D.    The Officer Defendants are Entitled to Qualified Immunity.**

For the reasons stated above, Martin failed to provide sufficient evidence to create a fact issue as to the Officer Defendants' entitlement to qualified immunity. Specifically, Martin failed to create a material fact issue as to whether the Officer Defendants' conduct, as shown in the video and as alleged by Martin in his Complaint, violated Martin's constitutional rights. Further, Martin failed to create a material fact issue as to whether the Officer Defendants' conduct violated Martin's clearly established rights, and that their conduct was not objectively reasonable. The Officer Defendants' motion for summary judgment on qualified immunity should be granted as to Martin's excessive force claim.

## IV. Failure to Provide Medical Care Claim

Next, Martin alleges that Defendants failed to provide medical care after he was extracted from his cell by force. Deliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the

indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To satisfy the exacting deliberate indifference standard, a plaintiff must show two things: (1) an objective exposure to a substantial risk of serious harm, and (2) that the official acted or failed to act with deliberate indifference to that risk of harm. *Gobert*, 463 F.3d at 345. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12. A prison official acts with deliberate indifference if the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official also draws the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *See Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."). As stated above, medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Martin alleges that he was not allowed to have psychiatric help before he was extracted from his cell. He further alleges that he was kept in a crisis cell for 7-14 days before receiving treatment for his orbital fracture and lacerations suffered during the extraction. (ECF 11 at 4). However, the evidence contradicts Martin's version of events. Hayhurst, a registered nurse, was

on site from the beginning of the extraction, requesting that Martin cooperate so that he could be moved. (ECF 54 at Exh. 1; ECF 53-2 at 8). After he reached the crisis management cell, Martin received a shot (with his permission) of Benadryl and Haldol to help him calm down. (*Id*.). Hayhurst evaluated him visually from outside the crisis management cell (due to Martin's agitated state) and saw no visible injuries. When asked if he was hurt, Martin told her "yes," but did not respond when she asked him where he was injured. (*Id*.). For the next two days, he would not approach the cell door, but denied having any problems other than needing a shower. (*Id*. at 8). He was alert and oriented, and had no visible injuries. (*Id*.). On November 27, 2022, Martin was assessed by a nurse in his cell, who noted swelling of his eyes but that he could see normally. (*Id*. at 9; ECF 53-4 at 149). The following day, Martin was seen by a psychiatrist, who ordered him transferred to the Montford Unit to be considered for inpatient psychiatric care. (ECF 53-2 at 9; ECF 53-4 at 142-46). Martin refused to comply with officers who were to transport him to Montford, which resulted in a single use of a chemical agent. (ECF 53-2 at 9).

When Martin arrived at Montford on November 30, 2022, he was assessed by a nurse who noted that Martin's eyes had swollen shut and he had a swollen left elbow. (*Id*.). The following day, Martin's eyes were almost swollen shut, and he had marks on his left forearm and cuts on his knees. Medical personnel ordered x-rays of his facial bones, forearms and shoulders, which determined that there were no acute fractures or dislocations of his forearms or shoulders, but that a CT was recommended for his facial area. He also was approved for inpatient psychiatric treatment. (ECF 53-2 at 9-10; ECF 53-4 at 100, 109, 120-24; ECF 53-5 at 627-30, 770; 821-824). The CT showed a fracture of the floor of the right orbit with soft tissue herniated into the right maxillary sinus. Martin reported blurry vision but no eye pain or double vision. (ECF 53-2 at 11). During this time frame, he also submitted a sick call request because of discharge coming from his

eyes. An eye test showed that he had 20/50 vision in his right eye, and 20/50 vision in his left eye. He was prescribed antibiotic ointment. (ECF 53-2 at 10; ECF 53-5 at 839-841).

Martin also was referred to an ophthalmologist, who examined him on December 22, 2022, and determined that no surgical intervention was necessary for his orbital fracture. (ECF 53-2 at 11; ECF 53-5 at 836). While it is unclear from the records what complaints, if any, Martin had about his eyes between December 22, 2022, and his discharge from inpatient psychiatric care on May 3, 2023, records show that he made no complaints about his eyes from May 6, 2023, through October 23, 2023). (ECF 53-2 at 11). The evidence shows that medical personnel caring for Martin "promptly responded to his complaints and provided definitive treatments." (*Id*.).

The Court finds that the medical records provided by Defendants conclusively rebut Martin's allegations of deliberate indifference and, as a result, Martin has failed to provide evidence of a constitutional violation. *See Varnado*, 920 F.2d at 321. Further, under the standards set forth above, Martin not shown that Defendants violated a clearly established right with respect to his medical care, no has he shown objectively unreasonable conduct by any of the Defendants. Accordingly, because Martin has failed to create a disputed issue of material fact, Defendants are entitled to qualified immunity and their Motion should be granted as to this claim.

RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment be GRANTED.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 12, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).